```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
B & M LINEN, CORP.,              :      08 Civ. 10093 (LAP)
                                 :
              Plaintiff,         :      Memorandum & Order
                                 :
     - v. -                      :
                                 :
KANNEGIESSER USA, CORP.,         :
et al.,                          :
                                 :
              Defendants.        :
--------------------------------x
```



LORETTA A. PRESKA, Chief United States District Judge:

Plaintiff B&M Linen Corp. ("B&M" or "Plaintiff") brings this action sounding in tort and contract, arising out of the purchase of industrial laundry equipment from Defendant Passat Laundry Systems, Inc., d/b/a/ Kannegiesser USA, Inc., and s/h/a Kannegiesser USA, Corp. ("K-USA" or "Defendant"). By Order dated January 19, 2010, Judge Richard J. Holwell granted Defendant's partial motion to dismiss [dkt. no. 17]. Defendant now moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment as to all remaining counts, to wit, Count 1: Breach of Purchase Agreements; Count 2: Breach of Warranty; Count 5: Restitution and Reimbursement for Freight, Service, Slowdowns and Overtime; Count 6: Breach of Implied Duties of Good Faith and Fair Dealing; Count 9: Negligence and Gross Negligence; Count 11: Breach of Implied Warranty of Merchantability; Count 12: Breach of Implied Warranty as to

1

Fitness for Particular Purpose; and Count 13: Breach of Express Warranty.  (Notice of Mot. for Summ. J. [dkt. no. 57], March 30, 2012; Mem. of Law in Support of Def. K-USA's Mot. for Summ. J. ("Def.'s Br.") [dkt. no. 59], Mar. 30, 2012.)  For the reasons set forth below, Defendant's motion is GRANTED in its entirety.

I.   BACKGROUND

The following facts,[1] viewed in the light most favorable to Plaintiff, are relevant to Defendant's motion for summary judgment.

B&M Linen is a privately owned industrial laundry business that caters to the hospitality industry.  (Leslie F. Ruff's Decl. in Supp., Mar. 30, 2012 ("Ruff Decl.") [dkt. no. 58], Ex. J ("Michael Markus Dep."), at 7.)  K-USA is a Texas corporation that sells industrial laundry equipment manufactured by Kannegiesser GmH & Co ("K-Germany").  (Ruff Decl., Ex. B ("K-USA's Answer to Pl.'s Am. Compl.") ¶¶ 4, 17.)  K-USA does not itself manufacture laundry equipment.  (K-USA's Answer to Pl.'s Am. Compl. ¶ 22.)

---

[1] Defendant filed a Rule 56.1 Statement in support of its motion for summary judgment [dkt. no. 61].  Plaintiff, however, failed to file a statement of facts as to which there exists a general issue of material fact as required by Local Civil Rule 56.1.  As a result, any facts in Defendant's Rule 56.1 Statement that are not controverted by Plaintiff's papers and supporting documents are deemed admitted pursuant to the terms of that Rule.  See Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992) (citing Dusanenko v. Maloney, 726 F.2d 82, 84 (2d Cir. 1984).

2

In 2001, Michael H. Dreher, the CEO of K-USA, met with B&M to discuss B&M's business needs and K-USA's product line. (K-USA's Answer to Pl.'s Am. Compl. ¶ 17.) After a deliberate and extensive selection process, B&M chose to purchase equipment from K-USA. (Pl.'s First Am. Comp. ¶¶ 18, 19 [dkt. no. 9], March 5, 2009); (Ruff's Decl., Ex. K ("Miron Markus Dep."), at 22-23.) Subsequently, B&M purchased two tunnel washing machines and presses and six dryers from K-USA in 2001; and in 2005, B&M ordered one loading conveyor, one press, two storage conveyers, two shuttles, five dryers, two grand ironers, three roll ironers, one sheet folder, one sheet feeder, and one towel folder from K-USA. (K-USA's Answer to Pl.'s Am. Compl. ¶ 27.) The terms of the 2005 purchase order specified that K-USA was to provide installation and setup of the equipment. (Id. ¶ 30.) The service personnel who performed start-up and tune-ups in connection with that order came from both K-USA and K-Germany. (Pl.'s First Am. Comp. ¶ 28.)

In 2006, B&M purchased additional equipment and software upgrades from K-USA, and in 2007, ordered further software upgrades, which K-USA offered to install. (K-USA's Answer to Pl.'s Am. Compl. ¶¶ 36, 96-97.) The warranty period on the purchased equipment extended one year from the date of installation. (Michael Markus Dep., at 214.) The equipment that B&M purchased was designed to enable K-USA to monitor

3

performance and diagnose problems remotely via a modem and phone line; however, B&M opted not to connect the line enabling this feature permanently. (Michael Markus Dep. 278.)

B&M does not claim that the equipment purchased from K-USA was defective. (See Miron Markus Dep., at 50.) Rather, B&M referred to the equipment purchased from K-USA as "state of the art" in sales materials for potential clients. (See Michael Markus Dep., at 44-47, 448-51.) Moreover, sales materials credited the equipment for allowing B&M to offer "the best possible prices while providing superior quality," a statement by which Michael Markus, the Vice President of B&M Linen, still stands. (Michael Markus Dep., at 46, 450-51.)

At no point did B&M provide its employees and staff, including its maintenance personnel and management team, with formal training about the operation of laundry equipment and production. (See Miron Markus Dep. 75; Michael Markus Dep. 196-97, 205, 233-36; Ruff Decl., Ex. L ("Boris Markus Dep."), at 16-18, 57-58; Ruff Decl., Ex. M ("Lopez Dep."), at 91-92.) Additionally, B&M made its own modifications to the Kannegiesser washing system. (Michael Markus Dep. 109; Boris Markus Dep. 58.)

Plaintiff further admits that the alleged problems with the shuttle system software program did not result in any damage to customer goods and that the alleged degradation of the dryers'

4

support wheels similarly caused no damage. (See Boris Markus Dep. 110, 182.) B&M has been unable to point to the existence of non-hearsay evidence demonstrating that any of its customers refused to pay the balance of their bills or cancelled accounts with B&M because of damage to their linens. (See Michael Markus Dep., at 395; Def.'s R.56.1 Statement ¶ 24). Specifically, the record shows that at least one hotel, the Le Parker Meridien Hotel, remained a customer for two additional years even after informing B&M of damages to its linen in a letter dated June 5, 2006. (Michael Markus Dep., at 399-400.)

With regards to alleged lost profits, B&M admits that losing five to six customers per year was "pretty much normal" throughout the company's existence and that no customers were lost as a result of damage to laundry in 2009 and 2010. (Id. at 377, 390.) Additionally, B&M's gross receipts and sales increased annually from 1999 (when they totaled $2,001,199) to 2008, the company's best year (when they totaled $9,642,224). (See Miron Markus Dep. 164-70; Michael Markus Dep. 19.) Although gross receipts and sales fell in 2009 to $7,923,805, B&M has pointed to the recession as cause for the decline. (See Miron Markus Dep. 170.) After all, because B&M's business is directly tied to the occupancy of hotels, decreased occupancy necessarily leads to a lower volume of business. (Id. at 170.) Since 2009, B&M's production hours and workload have remained at

5

a reduced level as a result of the depressed economy. (Id. at 18-19, 21-22.)

**II.  DISCUSSION**

　　A.  Legal Standard for Summary Judgment

　　Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing language of previous Rule 56(c)).  The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists.  See Celotex, 477 U.S. at 323; see also FDIC v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994).  When making this determination, a court must review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in his or her favor.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 253 (2d Cir. 2002).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Lucente, 310 F.3d at 253 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The moving party may meet its burden by "pointing out to the district court" that little or no evidence may be found in support of the nonmoving party's case.  Celotex, 477 U.S. at 325.

To survive summary judgment "the nonmoving party must come forward with 'specific facts showing that there is a <u>genuine issue for trial</u>.'" Matsushita Elec. Indus. Co., 475 U.S. at 586 n.11 (quoting Fed. R. Civ. P. 56(e)).  "Conclusory allegations, conjecture, and speculation, however, are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).  Rather, the nonmoving party must point to specific facts in the affidavits, deposition, answers to interrogatories, or admissions on file to demonstrate a genuine issue in need of trial.  See  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); <u>see also</u> Celotex, 477 U.S. at 324.

When a nonmoving party fails to respond to a motion for summary judgment, "the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004).  "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Vt. Teddy Bear Co., 373 F.3d at 244).

7

B.   Choice of Law

A federal court sitting in diversity jurisdiction must apply the choice of law rules of the forum state. Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1538 (2d Cir. 1997).  The Second Circuit has articulated New York's choice of law rule in contract cases as follows:

> New York courts now apply a "center of gravity" or "grouping of contacts" approach . . . Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location, of the subject matter, and the domicile or place of business of the contracting parties . . . New York courts may also consider public policy "where the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests" . . . The traditional choice of law factors, the places of contracting and performance, are given the heaviest weight in this analysis.

Id. at 1539 (citing In re Allstate Ins. Co., 81 N.Y.2d 219, 227, 613 N.E.2d 936, 597 N.Y.S.2d 904 (1993)).

Here, although K-USA is a Texas corporation with its principal place of business in Texas, K-USA visited New York to negotiate and discuss potential transactions in advance of the contract's execution.  Moreover, the relevant contract concerns a transaction for goods to be delivered to and installed in New York, where B&M operates and is incorporated.  Thus, New York has the greatest interest in the performance of the contract,

and accordingly, New York's choice of law rules require the application of New York law in this case.

   C.   Analysis

   Upon assessing the record and making all inferences in the light most favorable to the plaintiff, the Court notes here at the outset that K-USA has satisfied its initial burden and made out a prima facie showing of entitlement to summary judgment by pointing to the absence of evidence on the record capable of supporting the various claims made by B&M. Consequently, the burden shifts to B&M to set forth specific facts demonstrating that there is a genuine issue for trial.

   The Court further notes that this case was filed more than four years ago and that the parties have had ample time to engage in discovery.  Nevertheless, Plaintiff did not file a response to Defendant's Rule 56 Statement, as required by Local Civil Rule 56.1(b), and Plaintiff's memorandum in opposition fails to point the Court to any specific evidence in the record but, rather, is replete with conclusory allegations solely concerning the reliability of the opinion of Defendant's proffered expert witness.  While the Court now undertakes the steps of identifying at least one necessary element of each remaining count to which Plaintiff has failed to carry the burden that has shifted its way on summary judgment, the Court notes that B&M has failed to point to <u>any</u> specific, admissible

9

evidence in support of its claims that would allow a reasonable jury to find in its favor.

### 1. Count 1: Breach of Purchase Agreements

Plaintiff's Amended Complaint ("Amended Complaint") [dkt. no. 9] alleges that K-USA breached two Purchase Agreements by failing "to properly design, test, manufacture and produce each piece of the equipment per exact specifications within the agreements;" failing "to provide the requisite start-up and commissioning on the agreed upon terms for the operation of the equipment so as to preclude any malfunctions, delays, loss of operations and services;" failing "to timely address an overwhelming number of problems with the equipment as specified in the PAs;" and failing "to set up and conduct timely tests for possibility of synchronizing the equipment as called for in the PAs." (See Am. Compl. ¶¶ 41-42.)

"Under New York law, to recover for breach of contract a plaintiff bears the burden of proving by a preponderance of the evidence: (1) the existence of an enforceable contract; (2) performance by one party; (3) breach by the other party; and (4) damages." Pisani v. Westchester Cty. Health Care Corp., 424 F.Supp.2d 710, 719 (S.D.N.Y. 2006) (citing Harasco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). Additinoally, to recover damages, the plaintiff must quantify and substantiate the actual damages in specific, non-speculative terms. Wagner

v. JP Morgan Chase Bank, 2011 WL 856262, at *7 (S.D.N.Y. March 9, 2011).

Plaintiff has failed to point the Court to any evidence demonstrating a genuine issue of fact on the element of breach of the contract by K-USA. With regards to whether the equipment provided by K-USA was defective, Plaintiff does not even dispute Defendant's contention that Miron Markus, owner of B&M Linen, admitted that the case is not about defective equipment but, instead, the type of customer service K-USA provided. Nor does Plaintiff indicate a reason why the Court should infer B&M's own literature, which refers to the Kannegiesser equipment as state of the art, as an admission that the equipment was not defective. Additionally, Plaintiff offers nothing more than conclusory allegations through its attorney to rebut the proffered opinion of Defendant's expert witness that K-USA's equipment is not prone to malfunction when maintained properly. Finally, to the extent the purchase agreements also bind K-USA to a certain level of customer service, Plaintiff again does not offer any evidence that K-USA's service was deficient beyond conclusory allegations aimed at undermining the opinion of Defendant's expert witness.

Additionally, Plaintiff has not demonstrated that any evidence exists to rebut Defendant's showing that the record is devoid of sufficient evidence to demonstrate that B&M has been

11

damaged as a result of K-USA breaching the purchase agreements. Under New York Law, "'[t]he failure to prove damages . . . is fatal to [a] plaintiff's breach of contract cause of action.'" LNC Invests., Inc. v. First Fidelity Bank, N.A.N.J., 173 F.3d 454, 465 (2d Cir. 1999) (citation omitted).  Plaintiff has not put forth any evidence to rebut Defendant's showing that any financial losses by B&M during the relevant time period should be attributed to the general drop in business experienced by the hospitality industry for the same period.

Because Plaintiff has failed to demonstrate that a genuine issue of fact remains for trial on at least one necessary element of a claim for breach of contract, summary judgment is granted in favor of Defendant on Count 1.

### 2. Count 5: Restitution and Reimbursement for Freight, Service, Slowdowns, and Overtime

"Under New York law, '[t]o prevail on a claim of unjust enrichment, the [p]laintiff must establish (1) that the defendant benefitted; (2) at the [p]laintiff's expense; and (3) that equity and good conscience require restitution.'" Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 534 (S.D.N.Y. 2011) (quoting Beth Israel Med. Ctr. V. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006).  This Court's observation in its January 19, 2010 Order, with respect to Plaintiff's claims against Michael

H. Dreher that Plaintiff's claim "for restitution and reimbursement is another version of its breach-of-contract claim" (see [dkt. no. 17], at 16) serves to characterize the same claim as it relates to K-USA.

A claim for restitution is available as an alternative to breach of contract, on the theory that even if no express contract controls, the defendant would be unjustly enriched without a restitution award to the plaintiff.  See Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir. 1996).  This Court may only consider such a claim if it first determines that no contractual relationship exists between B&M and K-USA governing the relevant subject matter.  Beth Israel Med. Ctr., 448 F.3d at 586-87.

Plaintiff offers no evidence or rationale for why the Court should conclude that the restitution it seeks under Count 5 does not relate to transactions governed by the same purchase agreements at issue in Count 1, as Defendants have set forth. Accordingly, because there does not appear to be a genuine dispute that a contract exists governing the relevant subject matter, summary judgment is granted on Count 5 in favor of Defendant.

13

### 3. Count 6: Breach of Implied Duties of Good Faith and Fair Dealing

"Under New York law, parties to an express contract are bound by an implied duty of good faith, 'but breach of that duty is merely a breach of the underlying contract.'" Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992) (quoting Geler v. Nat'l Westminster Bank USA, 770 F. Supp. 210, 215 (S.D.N.Y. 1991) (citations omitted)).

Plaintiff's Amended Complaint expressly alleges that Defendant breached the covenant of good faith and fair dealing based on the same grounds as described in connection with the breach of contract claim. (See Am. Compl. ¶¶ 75-76.) Therefore, this claim is duplicative of the claims asserted under Count 1, and summary judgment is granted on Count 6 in favor of Defendant.

### 4. Count 9: Negligence and Gross Negligence

Where negligence and gross negligence claims have been asserted, New York applies the economic loss rule, which bars recovery in tort for purely economic losses allegedly caused by a defendant's negligence or gross negligence absent a showing of a legal duty independent of a contractual relationship. See Netzer v. Continuity Graphic Assocs., Inc., 963 F. Supp. 1308, 1320 (S.D.N.Y. 1997) ("'[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the

14

contract itself has been violated.'" (quoting Clark-Fitzpatrick v. Long Island R.R. Co., 516 N.E.2d 190, 193, 70 N.Y.2d 382, 389, (1987)).  An exception exists for claims for negligent performance of contractual services.  See Am. Tel. & Tel. Co. v. New York City Human Resources Admin., 833 F. Supp. 962 (S.D.N.Y. 1993).  However, courts have declined to invoke this exception and have instead applied the economic loss rule where the services are incidental to a sales of goods contract.  See id. at 982.  Moreover, even where a contract is construed as one for services, courts have precluded a plaintiff from invoking this exception absent a showing of a duty independent of a contractual relationship.  See, e.g., id. at 984-85.

Nowhere does Plaintiff's response to Defendant's motion address Defendant's showing that the record is devoid of any evidence concerning a special and independent relationship between the parties.  Where a moving party meets its initial burden of showing a lack of material issue of fact, and the nonmoving party does not respond, summary judgment is appropriate in favor of the moving party.  See Ying Jing Gan, 996 F.2d at 532.  Therefore, even assuming that the provisions for customer service within the purchase agreements were not incidental to the sales of goods, Plaintiff has not demonstrated the existence of any evidence of a special relationship between the parties to thereby take this claim beyond the bounds of the

15

economic loss rule.  Consequently, summary judgment is appropriate in favor of Defendant with regards to Count 9.

### 5. Counts 2, 11, 12 and 13:  Breach of Warranty Claims

#### a. Express Warranty Claims

To prevail on a claim of breach of express warranty, a plaintiff must show "'an affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase' and that the warranty was relied upon." See Schimmenti v. Ply Gem Indus., Inc., 156 A.D.2d 658, 659 (N.Y. App. Div. 1989).

Plaintiff failed to offer any response to Defendant's showing that the record does not contain evidence of such an affirmation or promise by K-USA.  Because this is a material element of such a claim and Plaintiff has yet to identify any evidence indicating that a genuine issue remains for trial on this element, summary judgment is appropriate in favor of Defendant with respect to Plaintiff's claims for breach of express warranty, to wit, Counts 2 and 13.

#### b. Claims for Breach of Implied Warranty of Merchantability and Implied Warranty as to Fitness for Particular Purpose

"To prevail on a [claim for] breach of implied warranty of merchantability, a plaintiff must show that the product at issue

16

is not 'fit for the ordinary purposes for which such goods are used' and [that] it caused [damages] as a result." See Santoro v. Donnelly, 340 F. Supp. 2d 464, 486 (S.D.N.Y. 2004). Similarly, to prevail on a claim of breach of implied warranty of fitness for a particular purpose, a plaintiff "must establish that the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required and that the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods, and that the buyer did in fact rely on that skill." See Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp., 230 A.D.2d 326, 331 (N.Y. App. Div. 1997). A seller may modify or exclude implied warranties by mentioning merchantability and, in the case of a writing, ensuring that the waiver is conspicuous. NY-UCC Law § 2-316(2). "To exclude or modify any implied warranty of fitness the exclusion must be a writing and conspicuous." Id. Moreover, an example of sufficient language is that "There are no warranties which extend beyond the description on the face hereof." Id. (internal quotation marks omitted). The relevant New York statute defines a term or clause as conspicuous "when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Id. § 1-201(1).

 Here, Defendant has put forth evidence sufficient to demonstrate that it properly disclaimed any and all warranties

17

and Plaintiff has failed to respond with any evidence to the contrary. Specifically, Defendant points the Court to Exhibit G of Plaintiff's Amended Complaint, entitled "Manufacturer's Warranty Policy," wherein the last paragraph states:

> K-USA makes no other express or implied warranty, statutory or otherwise, concerning any equipment or parts including, without limitations, a warranty of fitness for a particular purpose, or a warranty of merchantability. K-USA neither assumes, nor authorizes any person to assume for it any other warranty of liability in connection with the equipment or parts sold by K-USA.

(Am. Compl. Ex. G.) Particularly in light of B&M's status as a sophisticated party to the relevant transactions, this language meets the statutory requirements as it is in writing, the word "merchantability" is expressly mentioned, and it is contained in the last paragraph of a one-page warranty policy. As Plaintiff has not proffered any evidence as to why this language is insufficient to constitute an effective waiver, Plaintiff has not met its burden of demonstrating that a genuine issue of fact remains as to a necessary element of its claim. Moreover, to the extent that such language is insufficient to bring K-USA under statutory protection, Plaintiff has not offered anything other than conclusory allegations to rebut opinion of Defendant's expert opinion that the relevant equipment was not prone to malfunction when properly maintained and operated. Thus, summary judgment is granted in favor of Defendant on

Plaintiff's beach of implied warranty claims, to wit, Counts 11 and 12.

III. CONCLUSION

For the reasons stated above, Defendant K-USA's motion for summary judgment on all remaining counts [dkt. no. 57] is GRANTED in its entirety.

SO ORDERED.

Dated:  New York, New York
        March 19, 2013

_____
LORETTA A. PRESKA
Chief U.S. District Judge

19